1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9

10

11

12

13

14

15

16

| TRACY DENNIS, | NO.  C13-989-JPD |
|---|---|
| Plaintiff, | |
| vs. | ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT |
| LIBERTY MUTUAL GROUP dba LIBERTY NORTHWEST INSURANCE CORPORATION, SAFECO INSURANCE COMPANY OF AMERICA and GENERAL INSURANCE COMPANY OF AMERICA, | |
| Defendants. | |

17

## I.    INTRODUCTION AND SUMMARY CONCLUSION

18

19

20

21

22

23

24

On May 26, 2009, plaintiff Tracy Dennis was seriously injured while on business in a motor vehicle accident involving an underinsured motorist.  After settling for the inadequate policy limits of the driver at fault, she seeks declaratory relief that she is covered under the terms of the uninsured/underinsured motorist ("UIM") provisions of her employer's insurance plan.  The insurance carriers who issued the employer's policy, Liberty Mutual Group, Safeco Insurance Company of North America, and General Insurance Company of America (collectively "Liberty Mutual, or "defendants") seek declaratory relief that the terms of the

ORDER - 1

policy do not extend to provide coverage for Ms. Dennis' injuries. Both parties have filed

motions for summary judgment on their claims. Dkts. 10, 12-13. Diversity jurisdiction is

proper. For the reasons set forth below, plaintiff's motion for summary judgment is

GRANTED, and defendants' motion for summary judgment is DENIED.

## II.       BACKGROUND

At oral argument, the parties agreed that the facts material to the interpretation of the

policy are not in dispute. On the day of the accident, plaintiff and another employee of Truck

Trails Northwest, LLC ("Truck Trails") drove a to-be-rented Budget vehicle to a customer, and

were returning to work together in another Budget rental vehicle, a 2009 Chrysler minivan,

when a car behind them failed to stop in time, causing a collision and injuries to plaintiff. At

the time of the accident in question, plaintiff was employed by Truck Trails. Dkt. 13, Ex. 4

(Navone Dep. at p.13) (hereinafter "Navone Dep."). Truck Trails is an auto repair and service

business owned by Keith Navone. Navone Dep. at 11. Sometime prior to the plaintiff's

accident, Mr. Navone started a side business from the same business premises, operating as an

agency operator for Budget rental vehicles. Budget supplied the office equipment and vehicles

necessary for the business, but Truck Trails provided the personnel necessary to staff the car

rental location. Navone Dep. at 17.[1]

In 2007, Liberty Mutual issued policy No. 24-CC-216073-2, which identified Truck

Trails as the named insured. Dkt. 13, Exs. 1-3, 5, 6-9 (Wong Decl.) (hereinafter "the policy").

The policy provided business auto coverage protection, including a $1 million liability limit for

---

[1] Plaintiff was not an employee of Budget, although her actions that day were for the benefit of the Budget portion of the business owned by Mr. Navone. For reasons not before the Court, Budget is not a party to this litigation. In addition, the exact nature of the contractual relationship between Budget and Truck Trails is unknown. Finally, Budget's insurance company is not a party to the litigation. This case only involves plaintiff and her immediate employer's insurance companies.

"specifically described 'autos'" and "nonowned 'autos,'" as well as a $1 million UIM limit for

"specifically described 'autos.'"  *Id.*, Exs. 1-2.  Under the policy, coverage restricted to

"specifically described 'autos'"  was designated by a symbol "7," and defined in relevant part

as "only those 'autos' described in Item Three of the Declarations[.]"  *Id.*, Ex. 2 at 1.  Coverage

restricted to "nonowned 'autos' only" was designated by a symbol "9," and defined in relevant

part as "only those 'autos' you do not own, lease, hire, rent or borrow that are used in

connection with your business."  *Id.* at 2.  The declarations page of the policy identified two

specifically designated covered vehicles – a 1993 Ford 4x2 truck and a 1992 Ford F-250.  *Id.*,

Ex. 1 at 1.

In December 2008 and January 2009, Truck Trails made changes to the policy by

adding and deleting vehicles identified as the "specifically described 'autos'" in the policy.

*Id.*, Ex. 5-6.  Specifically, a 1993 Ford vehicle was added in December 2008, but deleted the

next month, when a 1999 jeep vehicle was added.  The type and extent of coverage, however,

remained unchanged.[2]

Most significantly, Truck Trails altered the policy a third time in May 2009 by

extending its liability coverage from "specifically described 'autos'" and "nonowned 'autos'"

(designations 7 and 9) to "any autos" (designation 1).  *Id.*, Ex. 8.  The $1 million coverage

limit for liability remained unchanged, and the $1 million coverage limit for UIM for

"specifically described 'autos'" (designation 7) remained unchanged.  *Id.*

Finally, the policy also included a "Washington Underinsured Motorists Coverage"

endorsement, which states that "this endorsement modifies insurance provided under the

following . . . business auto coverage."  *Id.*, Ex. 9.  The endorsement Schedule states that "this

---

[2] In other words, the $1 million liability coverage continued to apply only to "specifically described 'autos'" and "nonowned 'autos'" (designations 7 and 9), and the $1 million UIM limit continued to apply to "specifically described 'autos'" (designation 7).

endorsement provides 'bodily injury' and 'property damage' underinsured motorist coverage unless an 'X' is entered [in a box] below." *Id.* The endorsement was left blank, and therefore no "X" was entered in the box. *Id.* Similarly, no amount of coverage for "bodily injury" or "property damage" was specified on the endorsement. However, the Schedule also states that "*[i]nformation required to complete this Schedule, if not shown above, will be shown in the Declarations*." *Id.* (emphasis added).

Under the headings "Description of 'Autos'" and "Coverage," the endorsement provided that "we will pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'uninsured motor vehicle'" resulting from bodily injury or property damage sustained by the "insured" in an accident. Under the heading "Who Is An Insured," the endorsement provided that if the named insured designated in the declarations is a limited liability company, an "insured" includes "anyone 'occupying' a covered 'auto.'" *Id.*

III.    DISCUSSION

A.    Legal Standard for Summary Judgment

A moving party is entitled to summary judgment when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). An issue of fact is "genuine" if it constitutes evidence with which "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). That genuine issue of fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

Here, the parties stipulated during oral argument that there are no genuine issues of material fact regarding the policy. Thus, the sole issue before the Court concerns the proper interpretation of the insurance policy, which the Court may decide as a matter of law.

B.    Legal Issues

    1.  Does the plain language of the policy provide UIM coverage to plaintiff?

    2.  Is UIM coverage available to plaintiff by operation of RCW 48.22.030 because material changes were made to the policy in May 2009 and Liberty Mutual did not receive a written waiver or rejection of UIM coverage by the named insured?

C.    The Plain Language of the Policy Does Not Provide UIM Coverage to Plaintiff

As a threshold matter, the Court notes that during oral argument, the parties agreed that the vehicle plaintiff was driving at the time of the accident was covered by the plain language of the policy's liability provisions.  In other words, had plaintiff been the driver at fault in the accident, the liability provisions of the policy, as amended in May 2009 to extend liability coverage to "any autos," would have applied.  However, defendants assert that unlike the liability coverage provisions of the policy, the May 2009 amendment of the policy did not alter the portion of the declarations limiting UIM coverage to a "symbol 7," defined as only "specifically described 'autos.'"  Dkt. 18 at 2.  It is undisputed that the "specifically described 'autos'" listed in the declarations did not include the Chrysler minivan that plaintiff was driving.  Defendants argue that if the Court were to interpret the policy, and in particular the endorsement, as extending UIM coverage to plaintiff, such an interpretation "would render the policy declarations and insuring agreement forms that describe the application of 'symbol 7' meaningless."  *Id*. at 1.  Defendants further point out that "Liberty Mutual included a provision in the UIM endorsement that states that "[i]nformation required to complete this Schedule, if not shown above, will be shown in the Declarations."  *Id*. at 2.  As a result, the fact that the Schedule in the UIM endorsement was left blank evinces the parties' intention that UIM coverage to be governed by the coverages listed in the Declarations.  *Id.*

1        Relying on the endorsement, plaintiff argues that the plain language of the policy

2 extends liability coverage to plaintiff, despite the fact that the policy's declarations limited

3 such coverage to "specifically described 'autos'" (designation 7). Specifically, plaintiff argues

4 that the endorsement "states that bodily injury and property damage coverage is provided

5 unless an 'X' is entered in the box shown on the first page of the endorsement page. Clearly,

6 the box is not marked at all." Dkt. 15 at 6. Plaintiff asserts that "if Liberty Mutual had

7 specifically wanted only certain vehicles to have UIM coverage, then it should have marked

8 the box with an 'X' and listed the specific vehicles in the designated section." *Id.* at 7.

9 "Consequently, this UIM endorsement section provides UIM coverage to all 'covered autos'

10 under the policy," and "[i]n this instance, when Truck Trails changed its policy to broaden its

11 coverage to include all of its employees using 'nonowned autos,' all 'nonowned autos' became

12 'covered autos' as designated as Symbol 1 ('Any auto') in Liberty Mutual's Business Auto

13 Coverage Form." *Id.*

14        An insurance contract should be considered as a "whole" and be given a "fair,

15 reasonable and sensible construction as would be given to the contract by the average person

16 purchasing insurance." *Quadrant Corp. v. American States Ins. Co.*, 154 Wash. 2d 164, 171,

17 110 P.3d 733 (2005). The interpretation of an insurance policy involves a question of law.

18 *Smith v. Continental Casualty Co.*, 128 Wash. 2d 73, 78, 904 P.2d 749 (1995). A clause is

19 ambiguous only "when on its face, it is fairly susceptible of two different interpretations, both

20 of which are reasonable." *Quadrant*, 154 Wash. 2d at 171. If a clause is ambiguous, the Court

21 may rely on extrinsic evidence of the intent of the parties to resolve the ambiguity. *Id.* at 171-

22 72. "Any ambiguity remaining after examination of the applicable extrinsic evidence is

23 resolved against the insurer and in favor of the insured." *Id.* at 172. Nevertheless, "an

24 insurance contract should not be given a strained interpretation that would render it ineffective.

ORDER - 6

If policy language is clear, a court must construe it as written and may not create an ambiguity where none exists." *Smith*, 128 Wash. 2d at 81.

With this framework in mind, the Court must turn to the policy and its terms.[3]  As discussed above, the UIM endorsement provides, in relevant part:

**A.  Coverage**

1.  We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "underinsured motor vehicle."  The damages must result from "bodily injury" or "property damage" sustained by the "insured" caused by an accident....

Dkt. 13, Ex. 9 at 1.

As a result, in order to be covered by the UIM policy, plaintiff must first establish that she qualifies as an "insured" under the terms of the policy.   It is undisputed that the only "Named Insured" in the policy is Truck Trails, which is a limited liability company.  The term "insured" for UIM purposes is defined in part B of the endorsement as follows:

If the Named Insured is designated in the Declarations as:

. . .

2.  A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

a.  Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto."  The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

b.  Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

c.  The Named Insured for "property damage" only.

Dkt. 13, Ex. 9 at 1-2.

---

[3] Initially, it is important to note what is not in dispute.  There is no claim that the policy does not include a UIM provision, or that the policy as written does not comply with the requirements of the Washington UIM statute RCW 48.22.030.

1          Sections 2(b) and (c) do not apply to plaintiff.  Section 2(b) by its terms is for a
2    derivative injury – that is, damages sustained as a result of an "insured" being injured, such as,
3    for example, loss of consortium.  Section 2(c) is only applicable to Truck Trails, the named
4    insured.

5          This leaves only Section 2(a).  To be considered an "insured," by the terms of the
6    policy, plaintiff would have to be occupying a "covered auto."  Section I of the policy provides
7    that "Item Two of the Declarations shows the 'autos' that are covered 'autos' for each of your
8    coverages.  The following numerical symbols describe the 'autos' that may be covered 'autos.'
9    The symbols entered next to a coverage on the Declarations designate **the only 'autos' that**
10   **are covered** under 'autos.'"  Dkt. 13, Ex. 2 at 1 (emphasis added).

11         As discussed in detail above, even after the May 2009 amendment of the policy, the
12   Declarations page provides that UIM coverage up to $1 million had been purchased only for
13   "specifically described 'autos'" (designation 7).  Dkt. 13, Ex. 8 at 1.  "Specifically described
14   'autos'" are defined as "[o]nly those 'autos' described in Item Three of the Declarations for
15   which a premium charge is shown...." Dkt. 13, Ex. 2 at 1.  It is undisputed that the Chrysler
16   minivan plaintiff was driving at the time of the accident was not a "specifically described
17   'auto'" in Item Three of the Declarations.  Because plaintiff was not "occupying" a "covered
18   auto" at the time of the accident, but instead was in a Budget vehicle, she does not fall within
19   the scope of the UIM coverage under the policy.

20         The Court is also not persuaded by plaintiff's argument that the endorsement section of
21   the policy extends UIM coverage to the Chrysler minivan because the Schedule states that "this
22   endorsement provides 'bodily injury' and 'property damage' underinsured motorists coverage

23

24

unless an "X" is entered below," and no such "X" was entered.  Dkt. 13, Ex. 9.[4]  There is no

dispute that the policy provides UIM coverage.  Moreover, the last sentence of the very

Schedule of the UIM endorsement on which plaintiff relies states, "Information required to

complete this Schedule, if not shown above, will be shown in the Declarations," indicating that

the declarations control the extent of coverage.  As discussed above, the declarations page

limits UIM coverage to "specifically described 'autos.'"

Accordingly, the plain language of the contract is unambiguous.[5]  Plaintiff was not

occupying a "covered auto" when the accident occurred, because in this case the declarations,

rather than the endorsement, controlled what constitutes a "covered auto" for UIM coverage.

*See e.g., Smith v. Continental Casualty Company*, 128 Wash. 2d 73, 904 P.2d 747 (1995)

(holding that an alleged ambiguity in an endorsement which added the lessor of a vehicle as an

"additional insured" did not provide UIM coverage to the lessor while that individual was

operating a vehicle not designated for coverage under the declarations of the policy).  The fact

that the UIM endorsement was left blank as to the check-the-box and description of covered

"autos" does not automatically confer UIM coverage to plaintiff.

---

[4] Similarly, the Schedule provides that "if an 'X' is entered in this box, this endorsement provides 'bodily injury' underinsured motorists coverage only for the following 'autos," but no "description of 'autos'" was included in the Schedule.

[5] As discussed above, both parties have argued that the policy is unambiguous.  Dkt. 10 at 2; Dkt. 15 at 4.  Only if an insurance policy is ambiguous may the court look to extrinsic evidence to construe the terms of the contract.  *Quadrant Corp.*, 154 Wash.2d at 171-72 ("If a clause is ambiguous, [a court] may rely on extrinsic evidence of the intent of the parties to resolve the ambiguity.").  Plaintiff moves to strike the extrinsic evidence relied upon by defendant in support of its motion for summary judgment.  Dkt. 15 at 4-5.  Defendants oppose plaintiff's motion to strike because "extrinsic evidence must be examined to determine the intent of the parties to the contract *if an ambiguity is found to exist*."  Dkt. 18 at 4 (emphasis added).  Because the Court also finds the language of the policy unambiguous, plaintiff's motion to strike this extrinsic evidence is GRANTED.

D.   If a New Policy is Issued, RCW 48.22.030 Extends UIM Coverage to the Same Extent as Liability Coverage Absent a Written Rejection or Waiver

Plaintiff's alternative argument is that regardless of the plain language of the policy, RCW 48.22.030 extends UIM coverage to plaintiff by operation of law because the May 2009 amendment constituted a "material change" to the policy, requiring a waiver or rejection of UIM coverage by the named insured (i.e., Truck Trails) that was not obtained by Liberty Mutual in this case.  Defendants conceded at oral argument that if the Court finds that the expansion of Truck Trails' liability coverage to encompass "any autos" was a "material" change under RCW 48.22.030 and relevant caselaw, plaintiff is entitled to UIM coverage by operation of law.  However, defendants argue that the Court should not find that the May 2009 policy amendment constituted a "material" change, especially because the $1 million coverage limit for liability was not increased at that time.

The Washington Supreme Court has held that insurance regulatory statutes are incorporated into an insurance policy.  *Johnson v. Farmers Ins. Co.,* 117 Wash.2d 558, 565, 817 P.2d 841 (1991) (citing *Blackburn v. Safeco Ins. Co.,* 115 Wash.2d 82, 86, 794 P.2d 1259 (1990)).  In Washington, UIM coverage is considered sufficiently important to require that any rejection of it be in writing.  *Torgeson v. State Farm*, 91 Wash. App. 952, 958, 957 P.2d 1283 (1998) (citing *Clements v. Travelers Indem. Co*., 121 Wash.2d 243, 255, 850 P.2d 1298 (1993)).  Specifically, the Washington State UIM law, RCW 48.22.030, provides in part as follows:

> (2)   No new policy or renewal of an existing policy insuring against loss resulting from liability imposed by law for bodily injury … suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be issued … unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of underinsured motor vehicles because of bodily injury …resulting therefrom…..

(3)     Except as to property damage, coverage required under subsection (2) of this section shall be in the same amount as the insured's third party liability coverage unless the insured rejects all or part of the coverage as provided in subsection (4) of this section….

(4)     A named insured or spouse may reject, in writing, underinsured coverage for bodily injury or death, or property damage, and the requirements of subsections (2) and (3) of this section shall not apply . . . The requirement of a written rejection under this subsection shall apply only to the original issuance of policies issued after July 24, 1983, and not to any renewal or replacement policy . . .

Thus, unless the insured has signed a written rejection, RCW 48.22.030 requires insurers to make UIM coverage available in all Washington automobile insurance policies in the same amount as the insured's third party liability or bodily injury coverage.  RCW 48.22.030(3); *Clements*, 121 Wash.2d at 562.[6]  Once coverage is offered as part of a new policy, the insured has the option to contract for complete, partial or no UIM coverage at all. *Johnson*, 117 Wash.2d at 562; RCW 48.22.030(4).  Once the insured declines all or part of the full UIM coverage, the insurer is not obligated to provide UIM coverage at the same levels as the liability coverage or to re-offer UIM coverage when issuing supplemental or renewal policies, unless the insured requests reinstatement of the coverage in writing.  *Johnson*, 117 Wash.2d at 562-63; RCW 48.22.030(4).  By contrast, under RCW 48.22.030(3), each time an insurer issues a "new" policy, UIM coverage must again be offered and rejected in writing; otherwise UIM coverage automatically equals the liability limits of the new policy.  *See Corley,* 76 Wash.App. at 694 (holding that where the insured did not waive or reject UIM coverage by an affirmative and conscious act, the insurer "is required to provide UIM coverage with limits . . . [equal to] the liability limits contained in the . . . agreement" because "UIM coverage must be in the same amount as the insured's third party liability coverage.").

---

[6] Specifically, the insurer must initially include UIM coverage in the insured's policy and cannot eliminate the option without an express written request by the insured declining all or part of the UIM coverage.  *Johnson*, 117 Wash.2d at 562.

In *Johnson,* the Washington Supreme Court adopted a "materiality standard" to distinguish a "new" policy from a "supplemental" or "renewal" policy under RCW 48.22.030. 117 Wash.2d at 571 (citing with approval *Kerr v. State Farm Mut. Auto. Ins. Co.,* 434 So.2d 970 (Fla. Dist. Ct. App. 1983); *Makela v. State Farm Mut. Auto. Ins. Co.,* 147 Ill. App. 3d 38, 100 Ill. Dec. 505, 497 N.E.2d 483 (1986)). *See also Koop v. Safeway Stores, Inc.,* 66 Wash. App. 149, 154, 831 P.2d 777 (1992) (noting *Johnson*'s adoption of the materiality standard to distinguish a new policy from continuation of existing policy). Washington courts have recognized that under this standard, "the inquiry is fact specific. We look to whether 'the changes made to the policy [are] sufficiently material to support a conclusion that a new, as opposed to a renewal, policy was issued.'" *Torgerson*, 91 Wash. App. at 958 (citing *Johnson*, 117 Wash.2d at 571). In addition, "in applying this standard to determine the applicable amount of UIM coverage, we must consider 'the intent and purpose of the statute' and the 'contract between the insurance company and the party asserting coverage.'" *Jochim v. State Farm Mut. Auto. Ins. Co*., 90 Wash. App. 408, 952 P.2d 630 (1998).

For example, Washington courts have found that a "new" policy is not created when a party simply replaces a vehicle covered under an existing policy with a new vehicle. *See Johnson,* 117 Wash.2d at 571. Likewise, the addition of a new car to an existing policy is no more than a renewal of, or an action supplementary to, the original policy. *Id.* Continuation of a policy number is also not determinative. *Id*. at 572.

In *Johnson*, the originally named insured previously elected lower UIM coverage limits instead of full coverage. After the insured separated from his wife, she acquired the insured vehicle and replaced it with a newer one, while also naming herself as the principal insured on the policy. The policy number and amounts of coverage remained the same. The Supreme Court held that the changes made by the wife to the initial policy did not constitute "material"

changes that created a "new" policy.  The Supreme Court observed that "[t]here were no changes made in coverage, and where coverage levels remain constant, the majority of jurisdictions support the conclusion that no new policy is created."  *Id*. at 572.  *See also Koop*, 66 Wash. App. at 149 (holding that an employer's initial rejection of UIM coverage was effective against subsequent renewals where the subject matter, policy number, and coverage levels remained the same).

In *Jochim*, Division II of the Court of Appeals interpreted *Johnson* and *Koop* as suggesting that the materiality inquiry focuses almost entirely upon whether there was an increase in liability coverage limits.  Specifically, the court observed that "the present case is similar to *Johnson* and *Koop* in that the amount of liability coverage remained unchanged," even though "the Jochims increased the overall scope of their insurance policy with the addition of collision, comprehensive, and indemnity coverages.  The question, then, is whether these changes to the Jochims' existing policy created a new policy within the meaning of RCW 48.22.030, even though the liability limits remained the same."  90 Wash. App. at 414.  The court noted that the Legislature's intent in enacting RCW 48.22.030 was to require insurers to offer UIM coverage to the same extent as the insured's third party liability coverage, and therefore an "insurer's exposure to liability arising from an accident involving an underinsured or uninsured motorist directly corresponds to the policyholder's limits of third party liability coverage."  *Id*.  The court concluded that although the policy's overall scope of coverage increased, "the addition of comprehensive, collision, and indemnity coverages . . . in no way alters or increases the insurer's exposure to additional UIM coverage; it is only liability coverage that corresponds by statute to the extent of UIM coverage that the insurer must make available."  *Id*.  As a result, the court held that "if the liability coverage limits remain constant, the insured will not be entitled to any additional amount of UIM coverage beyond the amount

initially selected.  It does not follow that an insurer should be obligated to re-offer UIM coverage or to obtain a second waiver or election of lower UIM limits." *Id.*

In the nearly contemporaneous case of *Torgerson*, Division III of the Court of Appeals disagreed with the *Jochim* court's focus on liability coverage limits, in particular.  91 Wash. App. at 961.  The court observed that although "the *Jochim* court . . . seems to read *Johnson* as imposing a bright line rule – if liability coverage does not change, then the materiality standard adopted in *Johnson* has not been met . . . we do not read *Johnson* so narrowly."  *Torgerson*, 91 Wash. App. at 961.  The court explicitly rejected State Farm's argument that "because the *amount* of liability coverage did not change . . . the policy cannot be 'new' as a matter of law" under *Johnson*, commenting that "we do not read *Johnson* as adopting a bright line rule. *Johnson* requires instead that we look at the materiality of the changes." *Id.* at 960.  In *Torgerson*, the policy was revised to add four new coverages, two of which had been specifically rejected in the earlier policy.  The court held that these changes were sufficiently material to constitute a "new policy" under *Johnson* and its progeny. *Id.* at 961.

E.  <u>RCW 48.22.030 Extends UIM Coverage to Plaintiff by Operation of Law</u>

As a threshold matter, the Court agrees with the *Torgerson* court's observation that *Johnson* did not limit the materiality inquiry to whether the liability coverage limits remained constant.  Although the *Johnson* court noted that "the fact that no changes in coverage limits are made is consistent with the act of continuation of the policy," the Supreme Court also emphasized that this is a fact-specific inquiry.  *Johnson*, 117 Wash.2d at 572.  Indeed, during oral argument, defendants conceded that no single factor controls the materiality inquiry, and that pursuant to *Johnson* and subsequent caselaw this Court should consider factors such as whether there were any changes made in the parties, subject matter, policy number, scope of coverage, and liability limits.  Thus, the fact that the $1 million coverage limit for liability was

ORDER - 14

1    not increased in May 2009 is not determinative of whether the changes made to the policy at

2    that time were "material."

3            Here, the scope of Truck Trails' liability coverage was drastically expanded with the

4    change from "specifically described 'autos'" and "nonowned 'autos'" (designations 7 and 9) to

5    "any autos" (designation 1) in May 2009.  Dkt. 13, Ex. 8.  The material nature of this change is

6    evident from Mr. Navone's deposition testimony, in which he explained that his entire reason

7    for amending the policy in May 2009 was to extend liability coverage to all his employees and

8    vehicles working with the Budget rental counter location because of his increased risk of

9    exposure to liability arising from operating the Budget rental car business:

10           Q:      Do you recall making changes to the policy in May 2009?

11           A:      ...I don't remember the exact month, but I did change my policy, yes.

12           Q:      Okay.  And specifically, if it rings a bell to you, was it that you had
                     added coverage  or-- to the policy for nonowned auto[s]?

13           A:      That is correct.

14           Q:      And that coverage would apply to all of your employees that had been
                     working for Truck Trails Northwest at the time?

15
             A:      That is correct.

16
             Q:      Okay.  When you made that modification or change to the policy, how
17                   did you go about doing that?

18           A:      The fact that I took over the rental counter location opened me up to a
                     little more liability and problems, so I called and spoke with my insurance agent
19                   and said that "This is what's going on.  I want more coverage, because I'd
                     rather be overinsured than underinsured."
20

21   Navone Dep. pp. 24-25.

22           The conclusion that the expansion of liability coverage to "any auto" constitutes a

23   material change is fully consistent with *Johnson* and its progeny, as well as the intent of the

     Legislature in enacting RCW 48.22.030.  This case is distinguishable from *Jochim*, which held
24

1   that the addition of collision, comprehensive, and indemnity coverages were not "material"

2   changes that created a "new" policy because the liability coverage limits remained unchanged.

3   *Jochim*, 90 Wash. App. at 415-16.  As discussed above, that court's holding was driven by its

4   reasoning that "it is only liability coverage that corresponds by statute to the extent of UIM

5   coverage that the insurer must make available."  *Id.* at 414.  Here, unlike in *Jochim*, Truck

6   Trails' liability coverage *was* expanded from only specified and non-owned autos to "all

7   autos," and therefore the insurer's exposure to liability arising from an accident involving an

8   underinsured or uninsured motorist increased to the same extent, absent a written waiver or

9   rejection by Truck Trails, because RCW 48.22.030 requires insurers to offer UIM insurance to

10  the extent of liability coverage.  *See* RCW 48.22.030(2)-(4).

11          Accordingly, the May 2009 expansion of liability coverage under the policy to "all

12  autos" was sufficient to constitute a "material" change to the policy, i.e., create a "new" policy

13  requiring Liberty Mutual to provide UIM coverage equal to the liability coverage, absent a

14  written waiver or rejection of such UIM coverage by the named insured (i.e., a representative

15  of Truck Trails such as Mr. Navone).  *See* RCW 48.22.030(2)-(4).  It is undisputed that no

16  written waiver or rejection of UIM coverage was obtained by Liberty Mutual at that time.  As a

17  result, plaintiff was entitled to UIM coverage under the policy.

18          F.      Genuine Issues of Material Fact Preclude Summary Judgment on Plaintiff's
                    Negligence, Bad Faith, and CPA Claims Against Liberty Mutual

19

20          Finally, although plaintiff has not moved for summary judgment on her extra-

21  contractual claims, plaintiff contends that "[b]ased on the records review of Liberty Mutual's

22  claims file, it is clear that Liberty Mutual outright denied coverage without determining or

23  investigating if there was any UIM coverage for plaintiff's losses arising from the May 26,

24  2009 collision.  A sophisticated company like Liberty Mutual should have known that a written

waiver rejecting UIM coverage was required under Washington law." Dkt. 15 at 11. Plaintiff argues that "at a minimum, there are genuine issues of material fact which preclude summary dismissal of plaintiff's bad faith, negligence and CPA claim" against Liberty Mutual. *Id.*

Defendants contend that "Liberty Mutual's reasonable conduct requires the dismissal of Ms. Dennis' remaining claims. The only conduct alleged in Ms. Dennis' complaint that gives rise to these extra-contractual claims concerns Liberty Mutual's coverage decision," but "a reasonable disagreement regarding the existence of coverage does not mean that the insurer acted in bad faith, violated the CPA or the IFCA." Dkt. 10 at 11-12 (citing *Ins. Co. of Pennsylvania v. Highlands Ins. Co.*, 50 Wash. App. 782, 786-87, 801 P.2d 284 (1990)).

Summary judgment on plaintiff's extra-contractual claims is inappropriate. There are disputed issues of material fact regarding Liberty Mutual's investigation and consideration of plaintiff's UIM claim. Because there are genuine issues of material fact as to the reasonableness of Liberty Mutual's handling of plaintiff's UIM claim, the Court DENIES defendants' motion for summary judgment and dismissal of these claims.

## IV.  CONCLUSION

Accordingly, plaintiff's motion for summary judgment, Dkts. 12-13, is GRANTED, and defendants' motion for summary judgment, Dkt. 10, is DENIED. Plaintiff is entitled to coverage under the UIM provision of policy No. 24-CC-216073-2. All issues not specifically resolved herein are reserved for subsequent disposition at trial.

DATED this 14th day of March, 2014.

*James P. Donohue*
_____
JAMES P. DONOHUE
United States Magistrate Judge

ORDER - 17